UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PAULA HINES, individually and on behalf of all others
similarly situated,

                            Plaintiff,                        Civil Action No.:

     v.

MEMORIAL SLOAN KETTERING CANCER CENTER,

                        Defendant.
------------------------------------------------------------------------x

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Paula Hines, individually and on behalf of all others similarly situated, alleges claims for violation of the wage and hour laws as follows:

1. Plaintiff has been employed by Defendant Memorial Sloan Kettering Cancer Center ("MSKCC") since 2001 and has worked as a Clinical Data Specialist in the Health Information Management, Medical Records Department, since at least April 2016. Plaintiff is paid on an hourly basis and is non-exempt from the overtime law protections.

2. Defendant has failed to pay Plaintiff and other Clinical Data Specialists overtime wages at time and a half for all hours in excess of forty hours per week in violation of the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 *et seq.*, and the New York Labor Law. Defendant also has failed to provide Plaintiff and other Clinical Data Specialists with a guaranteed thirty-minute lunch break and one hour's additional pay for hours worked in excess of ten hours per day in violation of the New York Labor Law.

3. When Plaintiff recently complained internally to management about the overtime violations, Defendant took unlawful retaliatory actions against Plaintiff in violation of the New York Labor Law, Section 215.1.

**JURISDICTION**

4. Plaintiff brings this action individually and on behalf of all other current and former Clinical Data Specialists employed by Defendant to recover unpaid wages and overtime wages, statutory damages and liquidated damages. Attached hereto as Exhibit A is Plaintiff's Consent Pursuant to 29 U.S.C. § 216(b) of the FLSA.

5. This Court has jurisdiction pursuant to the FLSA, 29 U.S.C. § 216 and 28 U.S.C. § 1331. Plaintiff has consented to file this lawsuit under the FLSA. See Exhibit A. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), because the majority of the unlawful acts complained of occurred in, and the records relevant to such practices are maintained in, this District where the Defendant reside.

7. Notification of Plaintiff's claim of retaliation has been served on the New York State Attorney General.

**THE PARTIES**

8. Plaintiff Paula Hines is a resident of New York. At all relevant times, and since at least April 2016, Plaintiff has worked as a Clinical Data Specialist in the Health Information Management, Medical Records Department of MSKCC, located at 633 Third Avenue, New York, New York. Plaintiff is paid an hourly wage of $45.50 and is a non-exempt employee.

9. Defendant Memorial Sloan Kettering Cancer Center ("MSKCC" or "Defendant") is a private cancer treatment and research institution with its primary address located at 1275 York Avenue, New York, New York. At all relevant times, Defendant has been the employer of Plaintiff within the meaning of the FLSA and the New York Labor Law.

## STATEMENT OF FACTS

10. Plaintiff has been employed as a Clinical Data Specialist in the Health Information Management, Medical Records Department, of MSKCC since at least April 2016. Plaintiff's primary job duty is to code observation cases for insurance reimbursement purposes. Her primary job responsibilities require Plaintiff to review the patient observation notes, review the medical files, update the files for attending physicians, enter the proper billing codes, and send the patient billing to insurance for reimbursement purposes. The time it takes Plaintiff to code each observation case can range from thirty minutes to two hours, depending on the complexity of the case.

11. Plaintiff's manager at MSKCC is Patricia O'Connor Campbell. In or around 2016, Ms. O'Connor Campbell informed Plaintiff that she needs to complete twenty cases per day. Similar daily case quotas are imposed on all Clinical Data Specialists in the Health Information Management, Medical Records Department, at MSKCC.

12. Plaintiff is paid an hourly wage of $45.50. Since 2016, Plaintiff has been assigned to work four days per week for ten hours per day, with a one-hour lunch break. Plaintiff's shift begins at 8:00 a.m. and is supposed to end at 6:00 p.m. However, because of the daily case load quotas, Plaintiff often is required to work through her lunch break and work longer than her assigned ten-hour shift in order to complete her work. As a result, Plaintiff sometimes does not complete her work until 10:00 p.m. or later. Indeed, Plaintiff routinely works through her lunch and/or works at least one hour, and sometimes many additional hours, each day in order to complete her daily case quota.

13. Plaintiff has not received overtime pay from MSKCC for the hours worked in excess of forty hours per week during her normal weekday shifts. Instead, Plaintiff has only received overtime pay at time and a half when she has worked on the weekends in addition to her regular shift.

14. From 2016 through 2020, Plaintiff has kept track of her time in an Excel spread sheet. At the end of each week, Plaintiff's supervisor and/or manager would review the Excel spreadsheet with time entries and send it to management and payroll. If the Excel spread sheet with time entries was not locked, and it was not Plaintiff's habit initially to lock her time sheets, it was possible for the time entries to be altered.

15. In or around 2021, Plaintiff's department adopted "MSK Time", an electronic means of recording time. With MSK Time, Plaintiff is required to click on "start" at the beginning of her shift and to click out at the end of her shift. Prior to clicking out of MSK Time, the program asks whether the employee took the full lunch break. Plaintiff was told by her manager that she must answer this question in the affirmative and click "yes" at all times, even if she was unable to take her full lunch break and/or worked through lunch.

16. On March 15, 2022, Plaintiff complained to her manager about working overtime without additional compensation. Plaintiff then met with her manager and the department administrator.

17. At or around this same time, Plaintiff was asked by a co-worker, in sum and substance, whether she was trying to get the administrator fired (by complaining about overtime violations) and why would she do this.

4

18. As a result of complaining about wage and hour violations, Plaintiff was required on March 30, 2022, to undergo a mandatory mental health and toxicology examination as a condition of continued employment – an unlawful, retaliatory action. Although Plaintiff passed the examination and kept her job, Plaintiff should not have been subjected to this unnecessary and invasive medical examination simply as a result of her complaining to management about wage and hour violations.

### Failure to Pay Overtime Wages

19. Defendant failed to pay Plaintiff and other similarly situated Clinical Data Specialists overtime wages at time and a half for hours worked in excess of 40 hours per week in violation of federal and New York State labor laws throughout Plaintiff's employment with Defendant.

### Failure to Pay Spread of Hours

20. Defendant failed to pay Plaintiff and other Clinical Data Specialists an extra hour of pay at the minimum wage for each day that they worked in excess of ten hours in violation of New York Labor Law throughout Plaintiff's employment with Defendants.

### Failure to Provide a Thirty Minute Lunch Break

21. Defendant failed to provide Plaintiff and other Clinical Data Specialists a minimum thirty-minute lunch break per six hour shift, plus an additional 20 minute meal break for shifts that extend before 11:00 a.m. and after 7:00 p.m., in violation of the New York Labor Law throughout Plaintiff's employment with Defendant.

22. Instead, Plaintiff and other Clinical Data Specialists were often required to work

through their scheduled lunch break in order to complete their daily case quotas.

23. Management required Plaintiff and other Clinical Data Specialists at all times to check "yes" in response to the prompt "did you take the full lunch break" in MSK Time, even when they worked through the lunch break.

### Unlawful Retaliation

24. On March 15, 2022, Plaintiff complained by email to her manager, Ms. O'Connor Campbell, and others concerning the overtime violations alleged herein. Within two weeks of making her complaint, on March 30, 2022, Plaintiff was subjected to a mandatory medical and mental health examination, including toxicology testing, as a condition of her continued employment – an unlawful, retaliatory action.

25. Indeed, on March 29, 2022, Rachel Chapman, from MSKCC Human Resources emailed Plaintiff stating:

> [Y]ou are required to report in-person to Employee Health at 222 E 70th Street, tomorrow (3/30) at 1:00pm for a medical and mental health assessment. The assessment will include toxicology testing as a standard procedure. On arrival at Employee Health, please ask for Dr. Sharma.
>
> This is a mandatory referral which means your employment at MSK is contingent on your attendance and participation in the assessment. It is therefore important that you attend. Please let me know if you need assistance rescheduling any work related commitments. The determination to initiate a referral was made by myself in consultation with Employee Health.

26. There was no rationale purpose for this examination, other than for MSKCC perhaps to discover a "reason" for potentially terminating Plaintiff, independent from her complaint to management about overtime violations. Although Plaintiff passed the examination, she should not have been subjected to an unnecessary and invasive medical

examination as a condition of continued employment as a result of her complaint about overtime violations.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rule 23(a) and (b) on behalf of a Class defined as follows: All Clinical Data Specialists who worked in the MSKCC Health Information Management, Medical Records Department, from April 2016 to the present.

28. Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

29. Defendant subjected Plaintiff and the respective Class members to the same unfair and unlawful practices and harmed them in the same manner.

### Numerosity

30. The proposed class is so numerous that joinder of all members would be impracticable. From April 2016 to the present, there have been approximately 75 or more Clinical Data Specialists employed by MSKCC in the Health Information Management, Medical Records Department. The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendant. The precise number of class members can be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**Commonality**

31. There are questions of law and fact that are common to Plaintiff's and Class members' claims.

32. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

> a. Whether Defendant violated the New York Labor Law by failing to pay Plaintiff and the Class overtime pay at time and a half for all hours in excess of forty hours per week;
>
> b. Whether Defendant violated the New York Labor Law by failing to pay Plaintiff and the Class an additional hour's pay (at minimum wage) for hours in excess of ten hours per day;
>
> c. Whether Defendant violated the New York Labor Law by failing to provide Plaintiff and the Class with a minimum thirty minute lunch break; and
>
> d. whether Plaintiff and the Class have suffered damages as a result of Defendant's actions and the amount thereof.

**Typicality**

33. Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of claims of the other Class members because of the common purpose of the Defendant's unlawful conduct in violation of the New York Labor Law. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

8

**Adequacy of Representation**

34. Plaintiff is an adequate representative of the Class she seeks to represent and will fairly and adequately protect the interests of that Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him. There is no hostility between Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

35. To prosecute this case, Plaintiff has chosen the undersigned law firm which is experienced in class action litigation, including wage and hour violations, and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

36. The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed Class members are based on Defendant's common violations of the New York Labor Law.

37. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

38. As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**Superiority**

39. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class members would create extreme hardship and inconvenience;

(b) Individual claims by Class members are impractical because the costs to pursue individual claims may exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

40. Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

41. Defendant has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (FEDERAL OVERTIME VIOLATION)

42. Plaintiff realleges and incorporates by reference each and every allegation contained above as if set forth fully herein.

43. Defendant intentionally failed to pay Plaintiff and other Clinical Data Specialists for each hour worked in excess of forty (40) hours per week at the rate of one and one-half times the regular hourly rate of pay in violation of 29 U.S.C. § 201 *et seq*.

44. Defendant's failure to pay overtime premiums was willful within the meaning of 29 U.S.C. § 255(a).

45. As a result of Defendant's willful and unlawful conduct, Plaintiff and other Clinical Data Specialists who timely opt-in to this collective action are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages.

## SECOND CAUSE OF ACTION
### (NEW YORK STATE OVERTIME VIOLATION)

46. Plaintiff realleges and incorporates by reference each and every allegation contained above as if set forth fully herein.

47. Defendant intentionally failed to pay Plaintiff and other Clinical Data Specialists for each hour worked in excess of forty (40) hours per week at the rate of one and one-half times their regular rate in violation of N.Y. Lab. Law § 650 *et seq*. and 12 N.Y.C.R.R. §137.

48. Defendant's failure to pay overtime premiums was willful within the meaning of N.Y. Lab. Law § 663 and supporting regulations of the New York State Department of Labor. As a result, Plaintiff and the Class are entitled to an award of damages in an amount to be

determined at trial, plus liquidated damages.

## THIRD CAUSE OF ACTION
### (NEW YORK STATE SPREAD OF HOURS VIOLATION)

49. Plaintiff realleges and incorporates by reference each and every allegation contained above as if set forth fully herein.

50. Defendant failed to pay Plaintiff and other Clinical Data Specialists one additional hour of pay at the minimum wage for each day Plaintiff worked more than ten (10) hours in violation of N.Y. Lab. Law § 650 *et seq.*, and 12 N.Y.C.R.R. § 137-1.7

51. Defendant's failure to pay Plaintiff and the other Clinical Data Specialists an additional hour of pay for each day they worked in excess of ten (10) hours was willful within the meaning of N.Y. Lab. Law § 663.

52. As a result of Defendant's willful and unlawful conduct, Plaintiff and the Class have been damaged in an amount to be determined at trial, plus liquidated damages.

## FOURTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF INDIVIDUALLY
### (UNLAWFUL RETALIATION)

53. Plaintiff realleges and incorporate by reference each and every allegation contained above as if set forth fully herein.

54. On or around March 15, 2022, Plaintiff complained to management about the overtime violations alleged herein. As a result of her complaint, Plaintiff was accused of trying to get her administrator fired and was subjected to an unnecessary medical and mental health examination, including toxicology testing, as a condition of continued employment.

55. Defendant had no reasonable basis for subjecting Plaintiff to this unnecessary and

invasive medical examination, other than potentially to discovery a "reason" to terminate her, independent from her protected wage and hour complaint.

56. Although Plaintiff passed the examination, she never should have been subjected to an invasive and unnecessary medical examination in the first place as a condition of her continued employment.

57. By requiring Plaintiff, as a condition of continued employment, to undergo an unnecessary and invasive medical examination immediately after she complained to management about wage and hour violations, Defendant has violated the N.Y. Lab. Law § 215.1, which provides in pertinent part: "An employer or his agent, or the officer or agent of any corporation, shall not discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer. . . . that the employer has violated any provision of this chapter."

58. Plaintiff has suffered damages as a result of Defendant's unlawful, retaliatory act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

a. a declaration that Defendant's conduct is in violation of the federal and New York State labor laws;

b. compensatory damages, including back wages;

d. liquidated damages;

e. punitive damages;

f. pre-judgment interest;

    g.    attorney's fees and costs;

    h.    a right to trial by jury on those claims where jury trial is permitted; and

    i.    any such further relief as may be just and proper.

Dated: April 27, 2022
       New York, New York

                              Giskan Solotaroff & Anderson, LLP

                              */s/ Catherine E. Anderson*
                              Catherine E. Anderson
                              canderson@gslawny.com
                              90 Broad Street, 2d Floor
                              New York, New York 10004
                              (212) 847-8315

                              *Counsel for Plaintiff, the Putative Class and Collective*